| COMPETENCY RANGE | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| *Interpersonal & Communication Skills* 3. Sustained ethically sound professional relationships with patients, families and colleagues. Comments: | 1 | (2) | 3 | 4 | X |
| 4. Maintained comprehensive, timely and legible medical records Comments: | 1 | 2 | (3) | 4 | X |
| **Professionalism:** behaviors reflect continuous professional development, ethical practice, sensitivity to diversity, and responsible attitude toward patients, profession, and society | | | | | |
| 1. Demonstrated respect, compassion, and integrity in relationships with patients, families, and colleagues Comments: | 1 | (2) | 3 | 4 | X |
| 2. Adhered to policies and guidelines for professional appearance and appropriateness of uniforms Comments: | 1 | 2 | (3) | 4 | X |
| **Systems Based Practice:** demonstrate an understanding of the contexts and systems in which health care is provided | | | | | |
| 1. Demonstrated cost effective health care and resource allocation without compromising quality of care Comments: | 1 | (2) | 3 | 4 | X |
| 2. Advocate for quality patient care: assisted patients in dealing with system complexities Comments: | 1 | (2) | 3 | 4 | X |
| 3. Partnered with health care managers and providers to assess, coordinate, and improve health care Comments: | 1 | (2) | 3 | 4 | X |
| **Osteopathic Principles & Practice:** demonstrate an understanding and awareness of the appropriateness of OMM | | | | | |
| 1. Demonstrated knowledge of osteopathic principles; can formulate treatment plan Comments: | 1 | (2) | 3 | 4 | X |
| 2. Demonstrated clinical thinking which incorporates structure/function interrelation Comments: | 1 | (2) | 3 | 4 | X |
| 3. Actively pursued the application of Osteopathic Manipulative Medicine to clinical cases Comments: | 1 | (2) | 3 | 4 | X |

**REQUIRED DOCUMENTATION (Strengths / Areas of Improvement, Supporting comments)**

Adam has been steadily improving over the last few months. His interpersonal skills have also improved. If attitude and work ethics remain constant I'm recommending Adam be given credit for his CA-1 year at the end of June 05. Sincerely, Antony DeZur

**OVERALL EVALUATION**     **Check one box please**

Recommend advancement in the training program

Recommend remediation of this rotation

**Preceptor Signature** _____     Date 6-2-05

**Resident Signature** _____     Date 6-2-5
    *The requirements of this rotation did not violate the 80 work policy*     Initial AH

Reviewed by Program Director (initial) _____     Date 6-2-05

OhioHealth/Hall
0665

# EVALUATION OF
# RESIDENT PERFORMANCE

Quarterly

Doctors Hospital
OhioHealth

Return to: Dept of Medical Education
5109 West Broad St.
Suite 205
Columbus, OH 43228

**NAME** Adam Hall    **SERVICE/ PRECEPTOR** Anesthesia    **DATES** 7/1/05 · 9/3/05

Please indicate the level of competency with consideration to level of training. A rating of 1 must be accompanied by an action plan or recommendation for remediation. A rating of 4 must be accompanied by supporting observations.

| COMPETENCY RANGE *Circle one rating* | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| **Patient Care:** compassionate, appropriate and effective for the promotion of health, prevention & treatment of illness, and end of life | | | | | |
| Gathered accurate, essential information from all sources: interviews, physical examinations, records, procedures Comments: | 1 | (2) | 3 | 4 | X |
| Made informed recommendations about preventive, diagnostic, and therapeutic interventions based on clinical judgment, evidence, and patient preference. Comments: | 1 | (2) | 3 | 4 | X |
| Performed competently the diagnostic and therapeutic procedures considered essential to the practice of medicine Comments: | 1 | (2) | 3 | 4 | X |
| **Medical Knowledge:** demonstrate knowledge of established and evolving biomedical, clinical, and social sciences | | | | | |
| Applied open-minded, analytical approach to acquiring new knowledge Comments: | 1 | 2 | (3) | 4 | X |
| Developed applicable knowledge of basic and clinical sciences Comments: | 1 | (2) | 3 | 4 | X |
| Applied knowledge to clinical problem-solving, decision-making, and critical thinking Comments: | (1) | 2 | 3 | 4 | X |
| **Practice-Based Learning:** use scientific evidence and methods to investigate, evaluate, and improve patient care practices | | | | | |
| Implemented strategies to enhance knowledge, skills, attitudes and processes of care Comments: | 1 | (2) | 3 | 4 | X |
| Developed and maintained willingness to learn from errors and improve system or processes of care. Comments: | 1 | (2) | 3 | 4 | X |
| Used information technology or other available methodologies to access and manage information, support patient care decisions, and enhance both patient and physician education. Comments: | 1 | (2) | 3 | 4 | X |
| **Interpersonal & Communication Skills:** demonstrate interpersonal & communication skills to establish professional relationships | | | | | |
| Provided effective and professional consultation to other physicians and health care professionals | 1 | (2) | 3 | 4 | X |
| Used effective listening, questioning and narrative skills to communicate with patients and families. Comments: | 1 | (2) | 3 | 4 | X |

## PLEASE CONTINUE EVALUATION ON REVERSE SIDE


EXHIBIT
12

OhioHealth/Hall
1050

**COMPETENCY RANGE**

| | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| **Interpersonal & Communication Skills** | | | | | |
| 3. Sustained ethically sound professional relationships with patients, families and colleagues. Comments: | (1) | 2 | 3 | 4 | X |
| 4. Maintained comprehensive, timely and legible medical records Comments: | 1 | (2) | 3 | 4 | X |
| **Professionalism: behaviors reflect continuous professional development, ethical practice, sensitivity to diversity, and responsible attitude toward patients, profession, and society** | | | | | |
| 1. Demonstrated respect, compassion, and integrity in relationships with patients, families, and colleagues Comments: | (1) | 2 | 3 | 4 | X |
| 2. Adhered to policies and guidelines for professional appearance and appropriateness of uniforms Comments: | 1 | (2) | 3 | 4 | X |
| **Systems Based Practice: demonstrate an understanding of the contexts and systems in which health care is provided** | | | | | |
| 1. Demonstrated cost effective health care and resource allocation without compromising quality of care Comments: | 1 | (2) | 3 | 4 | X |
| 2. Advocate for quality patient care: assisted patients in dealing with system complexities Comments: | 1 | (2) | 3 | 4 | X |
| 3. Partnered with health care managers and providers to assess, coordinate, and improve health care Comments: | 1 | (2) | 3 | 4 | X |
| **Osteopathic Principles & Practice: demonstrate an understanding and awareness of the appropriateness of OMM** | | | | | |
| . Demonstrated knowledge of osteopathic principles; can formulate treatment plan Comments: | 1 | 2 | 3 | 4 | (X) |
| . Demonstrated clinical thinking which incorporates structure/function interrelation Comments: | 1 | 2 | 3 | 4 | (X) |
| . Actively pursued the application of Osteopathic Manipulative Medicine to clinical cases Comments: | 1 | 2 | 3 | 4 | (X) |

**REQUIRED DOCUMENTATION (Strengths / Areas of Improvement, Supporting comments)**

**OVERALL EVALUATION**    *Check one box please*

Recommend advancement in the training program

Recommend remediation of this rotation

Preceptor Signature                                     Date   10/30/05

Resident Signature                                      Date Initial   4/11/6

The requirements of this rotation did not violate the 80 work policy

Reviewed by Program Director (initial) _____   Date _____

OhioHealth/Hall
1051

Dr. Hall resident evaluation:

Dr. Hall has been assigned to more complex surgical patients in the past quarter.  He needs to assess these patients in a more global manner.  He tends to focus on one area (ie. cardiac, pulmonary, etc.) and neglects other factors such as fluid administration, monitoring preparedness, and patient positioning. He continues to make assumptions about smaller details which could affect patient care.  He needs to work on attention to detail and not get distracted from the task at hand.  He has to earn respect in the operating room based on his care of the patient and his professional conduct.  Too often, he listens to side conversations and feels he has to comment.  He tries to be "everyone's friend"  in the operating room.

OhioHealth/Hall
1052

## Doctors Hospital
## OhioHealth

Graduate Medical Education
Attn: Stacey Caster
5109 West Broad St.
Suite 205
Columbus, OH 43228

| NAME | ADAM HALL | PROGAM Director | Dr. Werhan | QTR. | 10/1 - 12/31/05 |
|---|---|---|---|---|---|

Please indicate the level of competency with consideration to level of training.  A rating of **1** must be accompanied by an action plan or recommendation for remediation.  A rating of 4 must be accompanied by supporting observations.

| COMPETENCY RANGE<br>*Circle one rating* | Unsatisfactory/<br>Needs Attention | Competent/<br>Meets<br>expectations | Skilled | Exceeds<br>expectations | Does<br>Not<br>Apply |
|---|---|---|---|---|---|
| **Patient Care:** compassionate, appropriate and effective for the promotion of health, prevention & treatment of illness, and end of life | | | | | |
| 1. Gathered accurate, essential information from all sources:interviews, physical examinations, records, procedures<br>Comments: | 1 | (2) | 3 | 4 | X |
| 2. Made informed recommendations about preventive, diagnostic, and therapeutic interventions based on clinical judgment, evidence, and patient preference.<br>Comments: | 1 | (2) | 3 | 4 | X |
| 3. Performed competently the diagnostic and therapeutic procedures considered essential to the practice of medicine<br>Comments: | 1 | (2) | 3 | 4 | X |
| **Medical Knowledge:** demonstrate knowledge of established and evolving biomedical, clinical, and social sciences | | | | | |
| 1. Applied open-minded, analytical approach to acquiring new knowledge<br>Comments: | 1 | (2) | 3 | 4 | X |
| 2. Developed applicable knowledge of basic and clinical sciences<br>Comments: | 1 | (2) | 3 | 4 | X |
| 3. Applied knowledge to clinical problem-solving, decision-making, and critical thinking<br>Comments: | 1 | (2) | 3 | 4 | X |
| **Practice-Based Learning:** use scientific evidence and methods to investigate, evaluate, and improve patient care practices | | | | | |
| . Implemented strategies to enhance knowledge, skills, attitudes and processes of care<br>Comments: | 1 | (2) | 3 | 4 | X |
| . Developed and maintained willingness to learn from errors and improve system or processes of care.<br>Comments: | 1 | (2) | 3 | 4 | X |
| . Used information technology or other available methodologies to access and manage information, support patient care decisions, and enhance both patient and physician education.<br>Comments: | 1 | (2) | 3 | 4 | X |
| **Interpersonal & Communication Skills:** demonstrate interpersonal & communication skills to establish professional relationships | | | | | |
| . Provided effective and professional consultation to other physicians and health care professionals<br>Comments: | 1 | (2) | 3 | 4 | X |
| . Used effective listening, questioning and narrative skills to communicate with patients and families.<br>Comments: | 1 | (2) | 3 | 4 | X |

EXHIBIT

10

OhioHealth/Hall
1048

| COMPETENCY RANGE | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| *Interpersonal & Communication Skills* | | | | | |
| 3. Sustained ethically sound professional relationships with patients, families and colleagues. | 1 | (2) | 3 | 4 | X |
| Comments: | | | | | |
| 4. Maintained comprehensive, timely and legible medical records | 1 | 2 | (3) | 4 | X |
| Comments: | | | | | |

**Professionalism:** behaviors reflect continuous professional development, ethical practice, sensitivity to diversity, and responsible attitude toward patients, profession, and society

| | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| 1. Demonstrated respect, compassion, and integrity in relationships with patients, families, and colleagues | 1 | (2) | 3 | 4 | X |
| Comments: | | | | | |
| 2. Adhered to policies and guidelines for professional appearance and appropriateness of uniforms | 1 | (2) | 3 | 4 | X |
| Comments: | | | | | |

**Systems Based Practice:** demonstrate an understanding of the contexts and systems in which health care is provided

| | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| 1. Demonstrated cost effective health care and resource allocation without compromising quality of care | 1 | 2 | 3 | 4 | (X) |
| Comments: | | | | | |
| 2. Advocate for quality patient care: assisted patients in dealing with system complexities | 1 | 2 | 3 | 4 | (X) |
| Comments: | | | | | |
| 3. Partnered with health care managers and providers to assess, coordinate, and improve health care | 1 | 2 | 3 | 4 | (X) |
| Comments: | | | | | |

**Osteopathic Principles & Practice:** demonstrate an understanding and awareness of the appropriateness of OMM

| | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| 1. Demonstrated knowledge of osteopathic principles; can formulate treatment plan | 1 | 2 | 3 | 4 | (X) |
| Comments: | | | | | |
| 2. Demonstrated clinical thinking which incorporates structure/function interrelation | 1 | 2 | 3 | 4 | (X) |
| Comments: | | | | | |
| 3. Actively pursued the application of Osteopathic Manipulative Medicine to clinical cases | 1 | 2 | 3 | 4 | (X) |
| Comments: | | | | | |

**REQUIRED DOCUMENTATION (Strengths / Areas of Improvement, Supporting comments)**

Needs to continue to focus on maintaining attentiveness to patient care.

**OVERALL EVALUATION**   *Check one box please*

Recommend advancement in the training program

Recommend remediation of this rotation

Program Director Signature _____   Date 3/8/06

Resident Signature _____   Date 4/11/6

VP, Medical Education Signature   Kirk P. Hillard   Date 04/17/06

OhioHealth/Hall
1049

Dr. Hall resident evaluation:

Dr. Hall has been assigned to more complex surgical patients in the past quarter.  He needs to assess these patients in a more global manner.  He tends to focus on one area (ie. cardiac, pulmonary, etc.) and neglects other factors such as fluid administration, monitoring preparedness, and patient positioning. He continues to make assumptions about smaller details which could affect patient care.  He needs to work on attention to detail and not get distracted from the task at hand.  He has to earn respect in the operating room based on his care of the patient and his professional conduct.  Too often, he listens to side conversations and feels he has to comment.  He tries to be "everyone's friend"  in the operating room.

OhioHealth/Hall
0661

 **Doctors Hospital**
**OhioHealth**

5100 West Broad Street
Columbus, OH    43228

# EMPLOYMENT AGREEMENT
## FOR GRADUATE MEDICAL EDUCATION

*This Contract* is executed between; **OUCOM/DOCTORS HOSPITAL (419) Anesthesiology**
(Hereafter called the "Institution") and **Adam Hall, D.O.** (Hereafter called the "Resident"); AOA # **074687**

### WITNESSETH:

WHEREAS, the Resident is a graduate of an accredited osteopathic medical school and/or an AOA accredited internship who has been accepted for enrollment in an advanced Osteopathic Graduate Medical Education (OGME) training program and;

WHEREAS, the Program is sponsored by an institution engaged in providing medical care services; and

WHEREAS, institutions, organizations and agencies offering programs in osteopathic graduate medical education must assume responsibility for the educational validity of all such programs; and

WHEREAS, OGME requires the Resident be directly involved in providing patient care under supervision in an institution that accepts responsibility for the quality of its education programs; and

WHEREAS, satisfactory completion of all educational requirements, both by specialty college and by the institution is necessary for advancement to the next level of training; and

WHEREAS, the activities of the Program are recommended by the American Osteopathic Association and specialty boards that govern medical education; and

WHEREAS, throughout the duration of this agreement, the Resident, as described below, will receive an annual stipend and additional educational support, the amount of which is not related to the nature of services rendered or the number of hours spent in patient care; and

WHEREAS, the Resident and the Institution agree their relationship is solely educational; and

WHERE AS, excellence in patient care must not be compromised or jeopardized by the needs of prerogatives of the Program, nor should the educational mission be compromised by an excessive reliance on the Resident to fulfill institutional service obligations.

In consideration of the foregoing and of the terms, covenants, and conditions hereinafter set forth, each of the parties agree the following terms and conditions will govern the operation of the Program.

I.   PROGRAM DESCRIPTION
     A.  Level of Training: PG1-1            Resident Level: R--

     B.  **Term and Termination:** Duration of the Program begins February 2, 2006 and **expires** February 1, **2007.**This Agreement may be renewed upon successful completion of all educational and professional requirements associated with the Institution and the Program under the advisement of the Program Director. This Agreement shall not be terminated by either party prior to its expiration unless the Resident is unable to perform his/her assigned duties or fails to meet the performance expectations of the training Program and/or Institution in the judgment of the Institution, residency Program Director or the Vice President of Medical Education (VPME) due to incapacitating illness or the Resident has violated Institution policies and/or procedures. This Agreement may be terminated at any time by a Written Release by Mutual Consent. In the event of such termination, the Institution shall determine the amount of credit, if any, toward satisfying AOA and specialty college educational requirements to be awarded.

**EXHIBIT**
**4**

OhioHealth/Hall
0748

In the event this Agreement is not renewed, the Resident shall be notified by the Program Director and / or the VPME in writing no less than 120 days prior to the date of expiration. Should the decision not to renew occur within 120 days of expiration, the Resident shall be notified as circumstances allow prior to the date of expiration.

Should the Resident, by action or inaction, commit or allow to occur any action or course of action, which the Institution reasonably believes involved moral turpitude, or is contrary to the interests of patient care or the general welfare of the Institution, the Institution may terminate the Agreement without prior notice.

The Resident may appeal to a Grievance Committee comprised of members of the Institutions GME Committee whereby the Resident may submit an appeal for termination or other action taken against the Resident in accordance with the Grievance Policy of the Department of Medical Education. See *Graduate Medical Education: Corrective Action and Resident Grievance* policy for further details.

If the Institution loses its approval for training during the period of this Agreement, on the effective date of loss of such approval, the Resident shall have the option to be released from this Agreement and shall not be prohibited from immediately entering another Program approved by the AOA. In addition, effective on the date of loss of approval, the Institution shall terminate the program, at which time the Resident shall be granted credit for that portion of the program completed and released there from.

The institution and the Resident shall immediately notify the Council on Postdoctoral Training of the AOA in writing in the event of a breach or unilateral termination of this Agreement, by either party or of the termination of this agreement by written release by mutual consent. In the event of mutual release, it shall be the duty of the Institution to send a signed copy of the release to the Council on Postdoctoral Training of the AOA.

## II.   EDUCATIONAL SUPPORT

**A.  Stipend:**     Annual rate: $46,370          Hourly rate: $23.25

**B.  Educational leave:** Paid leave for dates of COMLEX examinations for OGME level 1 and above; continuing medical education dates for OGME level 2 and above, not to exceed 5 consecutive working days (Monday – Friday).

**C.  Educational stipend:** Paid to Residents in good academic standing for OGME level 2 and above in the amount of $1,500.00 to be utilized in conjunction with the requirements of the program and solely for the purpose of educational enhancement. See *Graduate Medical Education: Continuing Medical Education / Resident Educational Stipend* policy for further details.

## III.   BENEFITS

The Resident shall be offered life, health, dental, and disability insurance, subject to the same conditions applicable to hospital exempt employees and the terms and conditions of the hospital's current benefit plan and or policies. An overview of benefit options will be provided to the Resident on or before commencement of this Agreement.

**A.  Professional Liability Insurance** shall be provided to the Resident for acts incurred in the performance of their duties in the Institution or Affiliated institutions and is limited to actions within the scope of the residency Program. The Institution shall defend and assume the costs of all such claims, regardless of when such claims occur or whether the resident is actively participating in such residency Program. Activities outside the scope of the residency Program (i.e. moonlighting) shall not be covered by this Agreement. It is the sole responsibility of the Resident to make arrangements for such activities.

In consideration of such coverage, the Resident agrees to provide representatives of the Institution's Risk Management and / or General Counsel prompt notice of such claims or potential claim of professional liability, and to cooperate with said representatives in the investigation and defense of any claim made against the Resident or Institution due to the Resident's involvement in the delivery of patient care.

OhioHealth/Hall
0749

B. **Time Away from Duty** shall be granted to all Residents at all levels. Twenty work days (Monday – Friday) shall be provided for time away from work, as determined by the American Osteopathic Association, *Policies and Procedures for Intern and Resident Training*. Time away may include, but is not limited to, vacation, bereavement, illness (personal or immediate family), professional (interviews), or legal obligation (jury duty or other). See *Graduate Medical Education: Time Away from Duty* policy for further details on time away including, but not limited to Leave of Absence and Extended Leave of Absence.

C. **Continuing Medical Education** (CME) time away from duty shall be granted to Residents OGME level 2 and above who are in good academic standing. CME time away shall be used for Required and Elective courses only. No more than 5 working days shall be allowed per calendar month for CME time and may not be used in conjunction with any other time away from duty. See *Graduate Medical Education: Continuing Medical Education / Resident Education Stipend* policy for further details.

IV. **DUTY HOURS**

Residents at all OGME levels are expected to adhere to the assigned work hours in conjunction with the federal regulated work hours policy. Variations in daily work hours may occur according to service activity and affiliated institution. OGME level 1 Residents are not permitted to engage in moonlighting activities throughout the first year of training. See *Graduate Medical Education: Work Hours and Supervision* policy for more details.

V. **OFF-DUTY PROFESSIONAL ACTIVITY**

Any activities conducted outside this Agreement must not interfere with the Resident's performance of duties as outlined by the Program or the Institution. Any such activity must be approved by and reported to the Program Director prior to engagement.

VI. **LICENSURE**

Residents at all OGME levels are required to hold an active Temporary Training Certificate or official permanent license with the State Medical Board of Ohio throughout the duration of the Agreement. Documentation of such licensure or proof of current application must be provided to the Department of Medical Education prior to the commencement of this Agreement. Failure to comply shall enforce the immediate suspension or termination of this Agreement. See *Graduate Medical Education: Licensure* policy for further details.

VII. **PROFESSIONAL ACTIVITY**

While on duty at the Institution or Affiliated Institutions, the Resident is expected to conduct him/herself in accordance with the employee Policies and Procedures of the Institution.

In the event the Resident has or becomes aware of any health condition which could potentially affect the Resident's ability to practice medicine, or if the performance of essential functions of his/her job requires reasonable accommodation in order to facilitate the Resident's continued practice of medicine or essential requirements of his/her job, the Resident is required to immediately inform the residency Program Director and/or the VPME. Accommodations, if any, shall be determined by the parties noted. Such conditions include, but are not limited to, substance abuse, mental illness, physical disability, or contagious disease such as HIV or Tuberculosis.

In the event of any conflict between Policies and Procedures of the Institution and this Agreement, this Agreement shall override the Institution. Otherwise, Institutional Policies and Procedures apply.

The Resident is responsible for ensuring all requirements and expectations of the Department of Graduate Medical Education, the residency Program, and the specialty college are being met by attending and/or participating in assigned events such as educational programs, Institution committees and council meetings, completing all Medical Records, reading and adhering to the appropriate policies and procedures, and by abiding by the cognitive and non-cognitive standards for house staff.

OhioHealth/Hall
0750

VIII.   **OTHER SUPPORT SERVICES**

A.   **Employee Health** services are available to the Resident while on duty for medical assistance either through the Department of Employee Health or the Emergency Department. Counseling and other non-clinical mental & behavioral health services are available through the OhioHealth Employee Assistance Program.

B.   **Meals** shall be provided to Residents at all levels while on duty. See *Graduate Medical Education: Meals and Nutrition Services* policy for further details.

C.   **Linen** shall be provided to all Resident on-call rooms on a daily basis.

D.   **Living Quarters** shall be provided by the Institution to Residents at all levels for the purpose of required over night duty or on-call shifts. Such duty and requirement varies by specialty. Permanent housing is the responsibility of the Resident.

E.   **Uniforms**, such as lab coats and scrubs shall be provided by the Institution. Residents are provided 2 lab coats upon commencement of this Agreement and, thereafter, every other year or as needed. Surgical scrubs shall be provided while on a surgical service or performing such activity or as necessary for the function or physical condition of such activity.

IX.   **EMPLOYMENT STANDARDS / POLICIES**

The Resident shall comply with all policies applicable to hospital exempt employees, including but not limited to 1.) pre-employment health screening and physical examination; 2.) the Institution's policy sexual harassment and customer service.

A.   **Pre-employment health screening and physical examination** must be completed prior to the first day of this Agreement. Residents may randomly be requested to undergo a blood test, urinalysis, "breathalyzer" test or other diagnostic test or drug screen at the discretion of the Hospital Due to the critical importance to provide safe quality patient care. Failure to comply with or pass said examination may result in the immediate termination of this Agreement. See *Graduate Medical Education: Pre-employment health screening and Physical Examination* policy.

X.   **GENERAL PROVISIONS**

The Institution expressly acknowledges its obligations as a provider of health care and as an educational institution to maintain as confidential the records of the Resident. These records may be delivered to other health care treatment institutions or prospective employers only upon written request to the Hospital by appropriate government agencies as required by law. Documents to be transmitted will be marked "Confidential". This Agreement may only be amended or altered in any of its provisions by mutual agreement of the parties hereto, and any such change shall become effective when reduced to writing and signed by such parties or at such other time as such amendment(s) may provide. The laws of the State of Ohio shall govern this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement through their respective authorized officers, effective as of this day and year first written above.

_____          3-3-6
Resident/Trainee                                  Date

_____          3/3/06
Program Director                                  Date

*BRUCE E. WERHAN, P.U.*
Printed Name

*Kirk L. Hilliard, DO*                             03/03/2006
Kirk L. Hilliard, DO, Vice President of Medical Education          Date

*Reviewed by the OhioHealth Office of the General Counsel: KHartsel 2/05*

OhioHealth/Hall
0751

# DOCTORS HOSPITAL
# COLUMBUS, OHIO

## RESIDENT HOSPITAL CONTRACT

### ADDENDUM A

This is an Addendum made as of February 2, 2006 to the 2006-2007 Resident Contract (the "Agreement") by and between "Resident" and Doctors OhioHealth Corporation d/b/a/ Doctors Hospital "Institution" (this "Addendum").  To the extent of any inconsistencies between the terms of this Addendum and the terms of the Agreement, the terms of this Addendum shall supersede the inconsistent terms of the Agreement.  The parties to the Agreement hereby agree as follows:

1.  A timely (within 2 weeks by the end of each month and every 3 months) quarterly and monthly evaluation will be completed on the resident for the duration of his PGY-IV year. _____

2.  The resident will be required to be in 100% compliant with the prohibition requirements (Appendix I) of the State Medical Board of Ohio. Non-compliance will be an immediate cause for termination of this contract.

3.  The resident will only be allowed to moonlight with the approval of the program director and the Vice President of Medical Education.  However, the resident is prohibited from moonlighting for 90 days upon reinstatement.

4.  The resident will continue behavioral counseling sessions with Jeri O'Donnell through the duration of his residency.

5.  The resident will be required to have a formal psychological evaluation with a report to the V.P. of Medical Education.

6.  Extension of this contract may be necessary to meet all the requirements for the completion of the Anesthesia Residency Program.

**RESIDENT**
By: _____
Date: _____

**INSTITUTION**
By: _Kirk P. Hilliard DO_
Date: _03/03/06_

OhioHealth/Hall
0752

Appendix I

Report and Recommendation
In the Matter of Adam P. Hall, D.O.
Page 9

C. **PROBATIONARY CONDITIONS**: Upon reinstatement, Dr. Hall's certificate shall be subject to the following PROBATIONARY terms, conditions, and limitations for a period of at least two years:

1. **Obey the Law**: Dr. Hall shall obey all federal, state, and local laws, and all rules governing the practice of osteopathic medicine and surgery in the state of Ohio.

2. **Quarterly Declarations**: Dr. Hall shall submit quarterly declarations under penalty of Board disciplinary action and/or criminal prosecution, stating whether there has been compliance with all the conditions of this Order. The first quarterly declaration must be received in the Board's offices on the first day of the third month following the month in which this Order becomes effective, provided that if the effective date is on or after the 16th day of the month, the first quarterly declaration must be received in the Board's offices on the first day of the fourth month following. Subsequent quarterly declarations must be received in the Board's offices on or before the first day of every third month.

3. **Appearances**: Dr. Hall shall appear in person for quarterly interviews before the Board or its designated representative during the third month following the effective date of this Order. Subsequent personal appearances must occur every three months thereafter, and/or as otherwise requested by the Board. If an appearance is missed or is rescheduled for any reason, ensuing appearances shall be scheduled based on the appearance date as originally scheduled.

4. **Course on Personal/Professional Ethics**: Before the end of the first year of probation, or as otherwise approved by the Board, Dr. Hall shall provide acceptable documentation of successful completion of a course or courses dealing with personal and professional ethics. The exact number of hours and the specific content of the course or courses shall be subject to the prior approval of the Board or its designee. Any courses taken in compliance with this provision shall be in addition to the Continuing Medical Education requirements for relicensure for the Continuing Medical Education acquisition period(s) in which they are completed.

5. **Absence from Ohio**: Dr. Hall shall obtain permission from the Board for departures or absences from Ohio. Such periods of absence shall not reduce the probationary term, unless otherwise determined by motion of the Board for absences of three months or longer, or by the Secretary or the Supervising Member of the Board for absences of less than three months, in instances where the Board can be assured that probationary monitoring is otherwise being performed.

6. **Violation of Probation; Discretionary Sanction Imposed**: If Dr. Hall violates probation in any respect, the Board, after giving him notice and the opportunity to be heard, may institute whatever disciplinary action it deems appropriate, up to and including the permanent revocation of his certificate.

Report and Recommendation
In the Matter of Adam P. Hall, D.O.
Page 10

D.  **TERMINATION OF PROBATION**: Upon successful completion of probation, as
evidenced by a written release from the Board, Dr. Hall's certificate will be fully restored.

E.  **REQUIRED REPORTING BY LICENSEE TO EMPLOYERS AND HOSPITALS**:
Within thirty days of the effective date of this Order, Dr. Hall shall provide a copy of this
Order to all employers or entities with which he is under contract to provide health care
services or is receiving training; and the Chief of Staff at each hospital where he has
privileges or appointments.  Further, Dr. Hall shall provide a copy of this Order to all
employers or entities with which he contracts to provide health care services, or applies for
or receives training, and the Chief of Staff at each hospital where he applies for or obtains
privileges or appointments.

F.  **REQUIRED REPORTING BY LICENSEE TO OTHER STATE LICENSING
AUTHORITIES**: Within thirty days of the effective date of this Order, Dr. Hall shall
provide a copy of this Order by certified mail, return receipt requested, to the proper
licensing authority of any state or jurisdiction in which he currently holds any professional
license.  Dr. Hall shall also provide a copy of this Order by certified mail, return receipt
requested, at time of application to the proper licensing authority of any state in which he
applies for any professional license or reinstatement or restoration of any professional
license.  Further, Dr. Hall shall provide this Board with a copy of the return receipt as proof
of notification within thirty days of receiving that return receipt.

**EFFECTIVE DATE OF ORDER:** This Order shall become effective thirty days after mailing
of notification of approval by the Board.

Sharon W. Murphy, Esq.
Hearing Examiner

OhioHealth/Hall
0754

Case 2:08-cv-00518-MHW-NMK  Document 38-2  Filed 09/21/09  Page 15 of 50

## Physician Orders
*Single Use Form*

**Allergy: Specify Reaction (Rxn) next to each allergy**

☐ ACTUAL
☐ STATED

☐ NKA  ☐ Penicillin: Rxn_____  ☐ Sulfa: Rxn_____  Weight:_____
☐ Unable to obtain  ☐ Codeine: Rxn_____  ☐ Iodine: Rxn_____  Height:_____
☐ Morphine sulfate; Rxn_____  ☐ Erythromycin; Rxn_____  ☐ Patient is pregnan
☐ Patient is lactating

**ALLERGIES:**

*Codeine  Mag sulfate.*
*Breathine*

**INSTRUCTIONS:** 1) Single use form, 2) Include reason for tests, procedures, and PRN Meds, 3) Cross out remainder of sheet, 4) Place on chart.

**DATE:** 4-13-6       **TIME:** 1580

*Celstone 1mg IM*
*D/C Celestone Cancel Order*

*Obtained  Dr Hall*
*for Dr pronly pod*
*S forgarty 4-13-06*
*15 60*

**EXHIBIT**
**15**

**Physician Signature:** _____

**Physician Printed Name:** Adam Hall

**Pager:** 241-0 → 857-7655

**Dictation/Physician Number:** _____

### OhioHealth

**Physician Orders**
*Single Use Form*

**Medication Orders Only:** Check box below for any "STAT" or "NOW" order(s) written above.

☐ STAT   ☐ NOW

3002762 (8-05)

*PHYORD*

0610310111                    04/13/06  P
0703090084    SURD

08/27/74  31Y  F
A- MILLER, STEVEN N
R- MILLER, STEVEN N

OhioHealth/Hall
0071

**DOCTORS HOSPITAL**
**DEPARTMENT OF GRADUATE MEDICAL EDUCATION**
Standard Policies & Procedures for House staff

**EFFECTIVE DATE:**   July 1996

**TITLE:**   Corrective Action and Grievance Policy

**PURPOSE:**   To standardize the process and methods of addressing academic and behavioral difficulties

**SKILL LEVEL:**   OGME levels 1-6 (House staff)

All Osteopathic Graduate Medical Education trainees level 1-6, (hereafter referred to as Houses staff) are expected to meet the academic standards set forth by their professional college and behave in accordance with the standards and policies of Doctors Hospital and its medical staff. Should any house staff member fail to meet the academic or behavioral standards, as prescribed, a defined course of corrective action must be established with consent from all parties. Failure to meet the standards of the corrective action agreement may result in suspension or termination or non-renewal of contract.

**INSTITUTIONAL STANDARDS**
It is important for the general welfare of the hospital that the House staff behaves in accordance with the hospital's personnel policies.

If house staff commit an offense "which the Institution reasonably believes involved moral turpitude or is detrimental to patient care or the general welfare of the Institution, the Institution may terminate the (house staff) without prior notice". Examples of such behavior are cheating, plagiarizing, falsifying records, stealing, abusing alcohol and/or drugs, verbal or sexual harassment, physical abuse, and other inappropriate actions or activities.

**ACADEMIC STANDARDS**
Corrective action for academic difficulty may result from a failure to attain the proper level of scholarship or non-cognitive skills that include: clinical abilities, institutional core competencies, interpersonal relations, and/or personal and professional characteristics.

I.   **OGME level 1 (hereafter "Intern")**
Any difficulty involving traditional interns shall be directed to the Assistant Director of Medical Education (ADME) and the Vice President of Medical Education (VPME). Academic or behavioral difficulty involving specialty or emphasis track interns should be directed to the respective program director who, in turn, shall work in conjunction with the ADME and/or VPME. In accordance with the academic calendar, deficiencies should be identified by the second week of the rotation, allowing the intern the remainder of the rotation in which to address the plan for improvement.

II.   **Residents**
Any difficulty involving residents shall be directed to the respective Program Director who, in turn, shall work in conjunction with the VPME. In accordance with the academic calendar, deficiencies should be identified by the second week of the rotation, allowing the resident the remainder of the rotation in which to address the plan for improvement.

**EXHIBIT**
tabbies®
16

OhioHealth/Hall
0064

## CORRECTIVE ACTION FOR ACADEMIC DIFFICULTIES

The corrective action procedures outlined below are specific to Doctors Hospital and are designed to provide a more comprehensive plan for identifying problems with ample opportunity to resolve deficiencies in a fair and timely manner. Faculty, including residents with teaching responsibilities, and program directors are responsible for demonstrating sufficient effort to help the intern or resident succeed.

The key to effective corrective action is efficiently documenting deficiencies or infractions. Effective documentation has four parts: 1) facts, 2) objectives, 3) solutions, 4) actions

I.  **Cognitive or Motor Skills**

When the academic deficiencies involve cognitive or motor skills, the following steps shall be taken. The ADME, VPME and/or the Program Director are responsible for initiating this action in regard to the interns. The Program Director and the VPME shall initiate these steps in regard to residents.

- ❑ Identify in writing the specific deficiencies (*facts*)
- ❑ Provide documentation of or specific descriptions of the standard levels of performance -- i.e., performance-based expectations (*objectives*)
- ❑ suggestions for ways to improve (*solutions*)
- ❑ invoke an action plan for monitoring progress and providing feedback; a description of the consequences should the house staff fail to achieve acceptable levels of performance (*actions*)

A.  **Interns**

In the event the intern does not meet the minimum standards of performance of a particular rotation, the intern will be he / she is at risk for not completing the requirements of the internship. A verbal description of the inadequacies and its effect on their academic standing shall be provided through a confidential discussion between the appropriate parties (i.e. Intern, preceptor, Program Director, ADME / VPME). At that time, a written plan for improvement, and a specified time frame in which to remedy the deficiencies shall be provided to the intern.

The intern shall be permitted one evaluation throughout the duration of the internship program in which the performance is deemed below the standard expectations. Should the requirements of the rotation be remediated within 30 days, not further action will be taken. Thereafter, any additional below standard evaluations shall require a formal corrective action plan as described above. This task shall be implemented by the ADME, VPME and/or Program Director in cooperation with the evaluating faculty member(s). The intern will be required to remediate and successfully complete the failed rotation(s) / rotation requirements in order to meet the minimum standards of internship. Any additional time used for the purpose of remediation will be in addition to the dates indicated on the Employment Agreement.

The intern may be placed on academic probation for a period of three to six months, during which time his or her performance will be monitored periodically by the program director and reported to the Vice President of Medical Education.

The AOA stipulates that in cases of disciplinary infractions judged unremediable, the Department of Medical Education will provide the intern with adequate notice, in writing, of the specific nature of the evidence in which the disciplinary action is based. The intern will be given an opportunity to appeal to the Graduate Medical Education Committee to present his or her position and explanations.

OhioHealth/Hall
0065

**B.**     **Residents**

In the event the resident does not meet the minimum standards of performance of a particular rotation, the resident will be notified he or she is at risk for not completing the requirements of the residency.  A verbal description of the inadequacies and its effect on their academic standing shall be provided through a confidential discussion between the appropriate parties (i.e. Resident, Program Director, and Vice President of Medical Education).  At this time, a plan for improvement, and a specified time frame in which to remedy the deficiencies shall be provided to the resident.   A sample improvement plan for residents being put on academic probation is included in the appendix to this policy.

The resident may be placed on probation for a period of three to six months, during which time his or her performance will be monitored periodically by the program director and reported to the Vice President of Medical Education.

The AOA stipulates that in cases of disciplinary infractions judged unremediable, the Department of Medical Education will provide the resident with adequate notice, in writing, of the specific nature of the evidence in which the disciplinary action is based. The resident will be given an opportunity to appeal to the Graduate Medical Education Committee to present his or her position and explanations.

## CORRECTIVE ACTION FOR BEHAVIORAL DIFFICULTIES

Doctors Hospital and OhioHealth affiliates strictly adhere to a ZERO TOLERENCE policy for behavior difficulties involving aggression and sexual or verbal harassment.  Immediate dismissal from the training program or non-renewal of contract may result.

Behavioral or normative infractions include but are not limited to poor attitudes, elevated emotions, or poor interpersonal skills; beyond the realm of acceptable professional behavior.  If left unacknowledged, a precipitating event may trigger a reaction, out of proportion to the event.  The house officer gets blind sided ("I had no idea there was a problem" or "no one told me I was at risk of failing") and deprived of an opportunity to change.

A written record of communication is needed such that the house officer is aware of what was expected, has had ample opportunity to improve, was given suggestions for ways to improve, and knew beforehand the consequences for not adequately addressing the deficiencies.  A clear process for corrective action is needed that is consistently and openly applied to all house officers.  The same four-part plan used for academic difficulties also applies to behavioral difficulties.

Formulate an objective (rather than subjective) assessment of the behavior -- i.e., an assessment describing the facts about what was seen or heard or otherwise observed, not assumptions or interpretations about what the behavior meant.  Once the violation or performance problem is identified in writing, the resident must be informed how his or her behavior should change.  All documentation must be in writing, agreed upon by all parties involved, and indicated as such by the individual's signature.  A timeline for compliance should be outlined as well as follow-up procedures to address further corrective action or acknowledge compliance.

## GRIEVANCE PROCEDURES

In such a case any of the aforementioned infractions are judged unremediable, the Department of Medical Education will present the case to the Graduate Medical Education Committee and will provide the house staff with adequate notice, in writing, of the specific actions and conditions of release from the Employment Agreement.  The house staff will be given an opportunity to request the decision be reconsidered at which time he or she may present their defense, position and explanations to the

OhioHealth/Hall
0066

Graduate Medical Education Committee and have the opportunity to request to be reinstated to the training program.

When safety, performance, or behavioral concerns arise regarding an employee's fitness or ability to perform job-related duties or presence for work, administration my intervene and direct the employee for a medial or psychological evaluation including drug/alcohol testing the OhioHealth's expense. Employees may not refuse to comply with the evaluation which may include submission to testing, execution of consent and information release forms, and/or compliance with medical/rehabilitative authorities' recommendations.  Administration may be obligated to report such findings to the State Medical Board of Ohio.

*See the following OhioHealth HR Policies and Procedures for further details:*
   *Number 3.20 Fitness for Duty*
   *Number 3.50 Harassment*
   *Number 3.80 Workplace Violence*

Revised 2/06

4

OhioHealth/Hall
0067


**Doctors Hospital**
OhioHealth

5100 West Broad Street
Columbus, Ohio 43228-1607
614 | 544-1000
www.ohiohealth.com

April 20, 2006

Adam Hall, D.O.
110 W. Henderson Rd.
Columbus, Ohio 43214

Dear Dr. Hall:

This letter represents formal notification of the termination of your resident contract
dated February, 2006 with Doctors Hospital Anesthesia Residency Program effective
immediately.    We pride ourselves on being an "excellent osteopathic training center"
and regret when we have to terminate employment based on professional performance.

We have completed a thorough investigation of the facts outlined in a recent incident
report dated April 13, 2006.  That report alleges that you inappropriately diverted, for
your own use, medication that you prescribed for a patient and, in statements to your
Program Director, you admitted to the alleged behavior.  This behavior is in violation of
your resident contract and your consent agreement with the State Medical Board of Ohio
and necessitates the termination of your resident contract.

Pursuant to the Medical Education Department policy and consistent with AOCA
standards, you may request reconsideration of this decision to the Medical Education
Committee.  To the extent you wish to request reconsideration, please notify me at your
earliest convenience.  The next Medical Education Committee meeting is schedule for
April 26, 2006 at 7:00 a.m.

Respectfully,

Kirk L. Hilliard D.O.

Kirk L. Hilliard, D.O.
Doctors Hospital
Vice President Medical Education

cc:     American Osteopathic Association
        AOCA
        Bruce Werhan, D.O., Program Director
        Terri W. Meldrum, Esq.



EXHIBIT
17

OhioHealth/Hall
0062



**Doctors Hospital**
OhioHealth

### EVALUATION OF
### RESIDENT PERFORMANCE

Return to: Dept of Medical Education
5109 West Broad St.
Suite 205
Columbus, OH 43228

**NAME** Hall, A.     **SERVICE/ PRECEPTOR** VICTOR DIZON     **DATES** 13-1-05 / 1-17-06

Please indicate the level of competency with consideration to level of training. A rating of **1** must be accompanied by an action plan or recommendation for remediation. A rating of 4 must be accompanied by supporting observations.

| COMPETENCY RANGE *Circle one rating* | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| **Patient Care:** compassionate, appropriate and effective for the promotion of health, prevention & treatment of illness, and end of life | | | | | |
| 1. Gathered accurate, essential information from all sources:interviews, physical examinations, records, procedures | 1 | (○) | 3 | 4 | X |
| Comments: | | | | | |
| 2. Made informed recommendations about preventive, diagnostic, and therapeutic interventions based on clinical judgment, evidence, and patient preference. | 1 | (○) | 3 | 4 | X |
| Comments: | | | | | |
| 3. Performed competently the diagnostic and therapeutic procedures considered essential to the practice of medicine | 1 | (2) | 3 | 4 | X |
| Comments: | | | | | |
| **Medical Knowledge:** demonstrate knowledge of established and evolving biomedical, clinical, and social sciences | | | | | |
| 1. Applied open-minded, analytical approach to acquiring new knowledge | 1 | (2) | 3 | 4 | X |
| Comments: | | | | | |
| 2. Developed applicable knowledge of basic and clinical sciences | (1) | 2 | 3 | 4 | X |
| Comments: | | | | | |
| 3. Applied knowledge to clinical problem-solving, decision-making, and critical thinking | (1) | 2 | 3 | 4 | X |
| Comments: | | | | | |
| **Practice-Based Learning:** use scientific evidence and methods to investigate, evaluate, and improve patient care practices | | | | | |
| 1. Implemented strategies to enhance knowledge, skills, attitudes and processes of care | (1) | 2 | 3 | 4 | X |
| Comments: | | | | | |
| 2. Developed and maintained willingness to learn from errors and improve system or processes of care. | (1) | 2 | 3 | 4 | X |
| Comments: | | | | | |
| 3. Used information technology or other available methodologies to access and manage information, support patient care decisions, and enhance both patient and physician education. | (1) | 2 | 3 | 4 | X |
| Comments: | | | | | |
| **Interpersonal & Communication Skills:** demonstrate interpersonal & communication skills to establish professional relationships | | | | | |
| 1. Provided effective and professional consultation to other physicians and health care professionals | 1 | (○) | 3 | 4 | X |
| Comments: | | | | | |
| 2. Used effective listening, questioning and narrative skills to communicate with patients and families. | 1 | (○) | 3 | 4 | X |
| Comments: | | | | | |

## PLEASE CONTINUE EVALUATION ON REVERSE SIDE



EXHIBIT
18

OhioHealth/Hall
0223

## COMPETENCY RANGE

| COMPETENCY RANGE | Unsatisfactory/ Needs Attention | Competent/ Meets expectations | Skilled | Exceeds expectations | Does Not Apply |
|---|---|---|---|---|---|
| **Interpersonal & Communication Skills** | | | | | |
| 3. Sustained ethically sound professional relationships with patients, families and colleagues. Comments: | 1 (circled) | 2 | 3 | 4 | X |
| 4. Maintained comprehensive, timely and legible medical records Comments: | 1 | 2 (circled) | 3 | 4 | X |
| **Professionalism: behaviors reflect continuous professional development, ethical practice, sensitivity to diversity, and responsible attitude toward patients, profession, and society** | | | | | |
| 1. Demonstrated respect, compassion, and integrity in relationships with patients, families, and colleagues Comments: | 1 (circled) | 2 | 3 | 4 | X |
| 2. Adhered to policies and guidelines for professional appearance and appropriateness of uniforms Comments: | 1 | 2 (circled) | 3 | 4 | X |
| **Systems Based Practice: demonstrate an understanding of the contexts and systems in which health care is provided** | | | | | |
| 1. Demonstrated cost effective health care and resource allocation without compromising quality of care Comments: | 1 (circled) | 2 | 3 | 4 | X |
| 2. Advocate for quality patient care: assisted patients in dealing with system complexities Comments: | 1 (circled) | 2 | 3 | 4 | X |
| 3. Partnered with health care managers and providers to assess, coordinate, and improve health care Comments: | 1 | 2 (circled) | 3 | 4 | X |
| **Osteopathic Principles & Practice: demonstrate an understanding and awareness of the appropriateness of OMM** | | | | | |
| 1. Demonstrated knowledge of osteopathic principles; can formulate treatment plan Comments: | 1 | 2 | 3 | 4 | X (circled) |
| 2. Demonstrated clinical thinking which incorporates structure/function interrelation Comments: | 1 | 2 | 3 | 4 | X (circled) |
| 3. Actively pursued the application of Osteopathic Manipulative Medicine to clinical cases Comments: | 1 | 2 | 3 | 4 | X (circled) |

**REQUIRED DOCUMENTATION (Strengths / Areas of Improvement, Supporting comments)**

ill-prepared on rounds; asked to read on certain subjects but unable to demonstrate that he read up on those subjects; did not function as a team player (often missing during the day).

**OVERALL EVALUATION**    Check one box please
Recommend advancement in the training program
Recommend remediation of this rotation  [✓]

Preceptor Signature _____    Date 3/16/06

Resident Signature _____    Date _____
The requirements of this rotation did not violate the 80 work policy    Initial _____

Reviewed by Program Director (initial) _____    Date _____

OhioHealth/Hall
0224

 **OhioHealth**

**Office of the General Counsel**
180 East Broad Street
Columbus, Ohio 43215-3707
614 | 544-4300   fax | 544-4463

Frank T. Pandora II
Senior Vice President & General Counsel

Penny A. Proctor, Esq.
Chet Porembski, Esq., R. Ph.
Katrina M. English, Esq.
Terri W. Meldrum, Esq.
Keith P. Hartzell, Esq.

March 6, 2007

Patrick F. Smith
5025 Arlington Centre Blvd., Suite 250
Columbus, Ohio 43220

Re:    Adam Hall, D.O.

Dear Mr. Smith:

I am in receipt of your February 20, 2007 letter requesting that Doctors Hospital consider Adam Hall, D.O. for reinstatement into its Anesthesia Residency Program. While Doctors Hospital commends Dr. Hall for his efforts in seeking care and treatment for his addiction, his termination from the Anesthesia Residency Program at Doctors Hospital was final and is not subject to any reinstatement or reconsideration process.

Thank you for your request and we wish Dr. Hall luck in the future.

Sincerely,

Terri W. Meldrum, Esq.
Assistant General Counsel
OhioHealth Corporation

Cc:    Deborah Blackwell, D.O., Vice President of Medical Education
       Bruce Werhan, D.O., Program Director, Anesthesia



EXHIBIT
10

# Doctors Hospital
## OhioHealth



5100 West Broad Street
Columbus, Ohio 43228-1607
614 | 544-1000
www.ohiohealth.com

May 3, 2006

Adam Hall, D.O.
110 W. Henderson
Columbus, Ohio 43214

Dear Dr. Hall:

This letter is to inform you that the Graduate Medical Education Committee of Doctors Hospital upheld the termination of your residency contract with the Doctors Hospital residency program for the 2006-2007 academic year.

We wish you the very best of luck in your future professional career.

Respectfully,

*Kirk L. Hilliard D.O.*

Kirk L. Hilliard, D.O.
Vice President Medical Education

Cc:   Terri W. Meldrum, Esq.
      file



EXHIBIT
20



EXHIBIT

21

OHIO STATE MEDICAL BOARD

AUG 3 0 2006

# STEP I
# CONSENT AGREEMENT
# BETWEEN
# ADAM P. HALL, D.O.,
# AND
# THE STATE MEDICAL BOARD OF OHIO

This Consent Agreement is entered into by and between Adam P. Hall, D.O., [Dr. Hall], and the State Medical Board of Ohio [Board], a state agency charged with enforcing Chapter 4731., Ohio Revised Code.

Dr. Hall enters into this Consent Agreement being fully informed of his rights under Chapter 119., Ohio Revised Code, including the right to representation by counsel and the right to a formal adjudicative hearing on the issues considered herein.

## BASIS FOR ACTION

This Consent Agreement is entered into on the basis of the following stipulations, admissions and understandings:

A.    The Board is empowered by Section 4731.22, Ohio Revised Code, to limit, revoke, suspend a certificate, refuse to register or reinstate an applicant, or reprimand or place on probation the holder of a certificate for violation of Section 4731.22(B)(19), Ohio Revised Code, "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills," and/or Section 4731.22(B)(26), Ohio Revised Code, "impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice."

B.    The Board enters into this Consent Agreement in lieu of formal proceedings based upon the violation of Sections 4731.22(B)(19) and (B)(26), Ohio Revised Code, as set forth in Paragraphs E and F below, and expressly reserves the right to institute formal proceedings based upon any other violations of Chapter 4731. of the Revised Code, whether occurring before or after the effective date of this Agreement.

C.    Dr. Hall is licensed to practice osteopathic medicine and surgery in the State of Ohio, License # 34.008707, and is subject to probationary terms, conditions and limitations pursuant to the December 14, 2005 Board Order based upon his violation of Sections 4731.22(B)(5), Ohio Revised Code.

D.    Dr. Hall states that he is also licensed to practice osteopathic medicine and surgery in the states of Missouri and Kansas.

OhioHealth/Hall
0248

STEP I CONSENT AGREEMENT
ADAM P. HALL, D.O.
PAGE 2

E.  Dr. Hall admits that the Board ordered him to submit to a three-day examination at The Woods at Parkside [Parkside], a Board-approved treatment provider in Columbus, Ohio, on or about July 31, 2006, based upon his self-report that he was terminated from his anesthesia residency program with Doctors Hospital in Columbus, Ohio, because he diverted for self-use Celestone, a corticosteroid, that he prescribed for a patient; and that he had diverted Kenalog, another corticosteroid, in the past. Dr. Hall further admits that during this examination, he was diagnosed with substance abuse and Bipolar Disorder with mixed anxiety and that he entered Parkside for further treatment, including 28-day residential treatment.

F.  Dr. Hall further admits that due to his substance abuse he currently is impaired in his ability to practice osteopathic medicine and surgery according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice and an inability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills, due to his Bipolar Disorder with mixed anxiety.

## AGREED CONDITIONS

Wherefore, in consideration of the foregoing and mutual promises hereinafter set forth, and in lieu of any formal proceedings at this time, Dr. Hall knowingly and voluntarily agrees with the Board to the following terms, conditions and limitations:

**SUSPENSION OF CERTIFICATE**

1.  The certificate of Dr. Hall to practice medicine and surgery in the State of Ohio shall be SUSPENDED for an indefinite period of time.

Sobriety

2.  Dr. Hall shall abstain completely from the personal use or possession of drugs, except those prescribed, dispensed or administered to him by another so authorized by law who has full knowledge of Dr. Hall's history of chemical dependency.

3.  Dr. Hall shall abstain completely from the use of alcohol.

OHIO STATE MEDICAL BOARD

AUG 3 0 2006

Releases; Quarterly Declarations and Appearances

4.  Dr. Hall shall provide authorization, through appropriate written consent forms, for disclosure of evaluative reports, summaries, and records, of whatever nature, by any and all parties that provide treatment or evaluation for Dr. Hall's chemical dependency or related conditions, or for purposes of complying with this Consent Agreement, whether such treatment or evaluation occurred before or after the effective date of this Consent

OhioHealth/Hall
0249

STEP I CONSENT AGREEMENT
ADAM P. HALL, D.O.
PAGE 3

Agreement. The above-mentioned evaluative reports, summaries, and records are considered medical records for purposes of Section 149.43 of the Ohio Revised Code and are confidential pursuant to statute. Dr. Hall further agrees to provide the Board written consent permitting any treatment provider from whom he obtains treatment to notify the Board in the event he fails to agree to or comply with any treatment contract or aftercare contract. Failure to provide such consent, or revocation of such consent, shall constitute a violation of this Consent Agreement.

5.    Dr. Hall shall submit quarterly declarations under penalty of Board disciplinary action and/or criminal prosecution, stating whether there has been compliance with all the conditions of this Consent Agreement. The first quarterly declaration must be received in the Board's offices on the first day of the third month following the month in which this Consent Agreement becomes effective, provided that if the effective date is on or after the sixteenth day of the month, the first quarterly declaration must be received in the Board's offices on the first day of the fourth month following. Subsequent quarterly declarations must be received in the Board's offices on or before the first day of every third month.

6.    Dr. Hall shall appear in person for an interview before the full Board or its designated representative during the third month following the effective date of this Consent Agreement. Subsequent personal appearances must occur every three months thereafter, and/or as otherwise requested by the Board. If an appearance is missed or is rescheduled for any reason, ensuing appearances shall be scheduled based on the appearance date as originally scheduled.

**OHIO STATE MEDICAL BOARD**

**AUG 3 0 2006**

Drug & Alcohol Screens; Supervising Physician

7.    Dr. Hall shall submit to random urine screenings for drugs and alcohol on a weekly basis or as otherwise directed by the Board. Dr. Hall shall ensure that all screening reports are forwarded directly to the Board on a quarterly basis. The drug testing panel utilized must be acceptable to the Secretary of the Board.

Dr. Hall shall abstain from consumption of poppy seeds or any other food or liquid that may produce false results in a toxicology screen.

Within thirty days of the effective date of this Consent Agreement, Dr. Hall shall submit to the Board for its prior approval the name of a supervising physician to whom Dr. Hall shall submit the required urine specimens. In approving an individual to serve in this capacity, the Board will give preference to a physician who practices in the same locale as Dr. Hall. Dr. Hall and the supervising physician shall ensure that the urine specimens are obtained on a random basis and that the giving of the specimen is witnessed by a reliable person. In addition, the supervising physician shall assure that appropriate control over the specimen is maintained and shall immediately inform the Board of any positive screening results. Further, the supervising physician shall ensure that additional

OhioHealth/Hall
0250

FROM :CCMH ELDORADO SPRINGS MO          FAX NO. :4178762080          Jan. 15 2007 02:47PM P5

STEP I CONSENT AGREEMENT
ADAM P. HALL, D.O.
PAGE 4

testing of urine specimens for steroids is done on a random basis to include at least one out of every four urine specimens.

Dr. Hall shall ensure that the supervising physician provides quarterly reports to the Board, in a format acceptable to the Board, as set forth in the materials provided by the Board to the supervising physician, verifying whether all urine screens have been conducted in compliance with this Consent Agreement, whether all urine screens have been negative, and whether the supervising physician remains willing and able to continue in his or her responsibilities.

In the event that the designated supervising physician becomes unable or unwilling to so serve, Dr. Hall must immediately notify the Board in writing, and make arrangements acceptable to the Board for another supervising physician as soon as practicable. Dr. Hall shall further ensure that the previously designated supervising physician also notifies the Board directly of his or her inability to continue to serve and the reasons therefore.

All screening reports and supervising physician reports required under this paragraph must be received in the Board's offices no later than the due date for Dr. Hall's quarterly declaration. It is Dr. Hall's responsibility to ensure that reports are timely submitted.

8.    The Board retains the right to require, and Dr. Hall agrees to submit, blood or urine specimens for analysis at Dr. Hall's expense upon the Board's request and without prior notice.

Rehabilitation Program

9.    Within thirty days of the effective date of this Consent Agreement, Dr. Hall shall undertake and maintain participation in an alcohol and drug rehabilitation program, such as A.A., N.A., C.A., or Caduceus, no less than three times per week. Substitution of any other specific program must receive prior Board approval.

Dr. Hall shall submit acceptable documentary evidence of continuing compliance with this program which must be received in the Board's offices no later than the due date for Dr. Hall's quarterly declarations.

**OHIO STATE MEDICAL BOARD**

**AUG 3 0 2006**

Psychiatric Treatment

10.   Within thirty days of the effective date of this Consent Agreement, Dr. Hall shall submit to the Board for its prior approval the name and qualifications of a psychiatrist of his choice. Upon approval by the Board, Dr. Hall shall undergo and continue psychiatric treatment monthly or as otherwise directed by the Board. Dr. Hall shall comply with his psychiatric treatment plan, including taking medications as prescribed and/or ordered for his psychiatric disorder. Dr. Hall shall ensure that psychiatric reports are forwarded by

OhioHealth/Hall
0251

STEP I CONSENT AGREEMENT
ADAM P. HALL, D.O.
PAGE 5

his treating psychiatrist to the Board on a quarterly basis, or as otherwise directed by the Board. The psychiatric reports shall contain information describing Dr. Hall's current treatment plan and any changes that have been made to the treatment plan since the prior report; Dr. Hall's compliance with his treatment plan; Dr. Hall's mental status; Dr. Hall's progress in treatment; and results of any laboratory studies that have been conducted since the prior report. Dr. Hall shall ensure that his treating psychiatrist immediately notifies the Board of his failure to comply with his psychiatric treatment plan and/or any determination that Dr. Hall is unable to practice due to his psychiatric disorder. It is Dr. Hall's responsibility to ensure that quarterly reports are received in the Board's offices no later than the due date for Dr. Hall's quarterly declaration.

In the event that the designated treating psychiatrist becomes unable or unwilling to serve in this capacity, Dr. Hall must immediately so notify the Board in writing. In addition, Dr. Hall shall make arrangements acceptable to the Board for another treating psychiatrist within thirty days after the previously designated treating psychiatrist becomes unable or unwilling to serve, unless otherwise determined by the Board. Furthermore, Dr. Hall shall ensure that the previously designated treating psychiatrist also notifies the Board directly of his or her inability to continue to serve and the reasons therefore.

**OHIO STATE MEDICAL BOARD**

**CONDITIONS FOR REINSTATEMENT**

**AUG 3 0 2006**

11.     The Board shall not consider reinstatement of Dr. Hall's certificate to practice osteopathic medicine and surgery until all of the following conditions are met:

a.      Dr. Hall shall submit an application for reinstatement, accompanied by appropriate fees, if any.

b.      Dr. Hall shall demonstrate to the satisfaction of the Board that he can resume practice in compliance with acceptable and prevailing standards of care under the provisions of his certificate. Such demonstration shall include but shall not be limited to the following:

i.      Certification from a treatment provider approved under Section 4731.25 of the Revised Code that Dr. Hall has successfully completed any required inpatient treatment.

ii.     Evidence of continuing full compliance with a post-discharge aftercare contract with a treatment provider approved under Section 4731.25 of the Revised Code. Such evidence shall include, but not be limited to, a copy of the signed aftercare contract. The aftercare contract must comply with rule 4731-16-10 of the Administrative Code.

iii.    Evidence of continuing full compliance with this Consent Agreement.

OhioHealth/Hall
0252

STEP I CONSENT AGREEMENT
ADAM P. HALL, D.O.
PAGE 6

OHIO STATE MEDICAL BOARD

AUG 3 0 2006

iv.  Three written reports indicating that Dr. Hall's ability to practice has been
assessed and that he has been found capable of practicing according to
acceptable and prevailing standards of care.

Two reports shall be made by physicians knowledgeable in the area of
addictionology and who are either affiliated with a current Board-approved
treatment provider or otherwise have been approved in advance by the Board
to provide an assessment of Dr. Hall.  Prior to the assessments, Dr. Hall shall
provide the evaluators with copies of patient records from any evaluations
and/or treatment that he has received, and a copy of this Consent Agreement.
The reports from the evaluators shall include any recommendations for
treatment, monitoring, or supervision of Dr. Hall, and any conditions,
restrictions, or limitations that should be imposed on Dr. Hall's practice.  The
reports shall also describe the basis for the evaluator's determinations.

One written report shall be made by a psychiatrist, approved in advance by
the Board, who shall conduct a psychiatric examination of Dr. Hall.  Prior to
the examination, Dr. Hall shall provide the psychiatrist with copies of patient
records from any evaluations and/or treatment that he has received, and a
copy of this Consent Agreement.  The report from the evaluating psychiatrist
shall include the psychiatrist's diagnoses and conclusions; any
recommendations for care, counseling, and treatment for the psychiatric
diagnoses; any conditions, restrictions, or limitations that should be imposed
on Dr. Hall's practice; and the basis for the psychiatrist's determinations.

All reports required pursuant to this paragraph shall be based upon
examinations occurring within the three months immediately preceding any
application for reinstatement.

c.  Dr. Hall shall enter into a written consent agreement including probationary terms,
conditions and limitations as determined by the Board or, if the Board and Dr. Hall
are unable to agree on the terms of a written Consent Agreement, then Dr. Hall
further agrees to abide by any terms, conditions and limitations imposed by Board
Order after a hearing conducted pursuant to Chapter 119. of the Ohio Revised
Code.

Further, upon reinstatement of Dr. Hall's certificate to practice osteopathic
medicine and surgery in this state, the Board shall require continued monitoring
which shall include, but not be limited to, compliance with the written consent
agreement entered into before reinstatement or with conditions imposed by Board
Order after a hearing conducted pursuant to Chapter 119. of the Revised Code.
Moreover, upon termination of the consent agreement or Board Order, Dr. Hall
shall submit to the Board for at least two years annual progress reports made under

OhioHealth/Hall
0253

STEP I CONSENT AGREEMENT
ADAM P. HALL, D.O.
PAGE 7

penalty of Board disciplinary action or criminal prosecution stating whether Dr. Hall has maintained sobriety.

12.  In the event that Dr. Hall has not been engaged in the active practice of osteopathic medicine and surgery for a period in excess of two years prior to application for reinstatement, the Board may exercise its discretion under Section 4731.222, Ohio Revised Code, to require additional evidence of Dr. Hall's fitness to resume practice.

## REQUIRED REPORTING BY LICENSEE

13.  Within thirty days of the effective date of this Consent Agreement, Dr. Hall shall provide a copy of this Consent Agreement to all employers or entities with which he is under contract to provide health care services or is receiving training; and the Chief of Staff at each hospital where he has privileges or appointments. Further, Dr. Hall shall provide a copy of this Consent Agreement to all employers or entities with which he contracts to provide health care services, or applies for or receives training, and the Chief of Staff at each hospital where he applies for or obtains privileges or appointments.

14.  Within thirty days of the effective date of this Consent Agreement, Dr. Hall shall provide a copy of this Consent Agreement by certified mail, return receipt requested, to the proper licensing authority of any state or jurisdiction in which he currently holds any professional license. Dr. Hall further agrees to provide a copy of this Consent Agreement by certified mail, return receipt requested, at time of application to the proper licensing authority of any state in which he applies for any professional license or reinstatement of any professional license. Further, Dr. Hall shall provide this Board with a copy of the return receipt as proof of notification within thirty days of receiving that return receipt.

15.  Dr. Hall shall provide a copy of this Consent Agreement to all persons and entities that provide Dr. Hall chemical dependency treatment or monitoring.

The above-described terms, conditions and limitations may be amended or terminated in writing at any time upon the agreement of both parties.

## FAILURE TO COMPLY

If, in the discretion of the Secretary and Supervising Member of the Board, Dr. Hall appears to have violated or breached any term or condition of this Consent Agreement, the Board reserves the right to institute formal disciplinary proceedings for any and all possible violations or breaches, including but not limited to, alleged violations of the laws of Ohio occurring before the effective date of this Consent Agreement.



OHIO STATE MEDICAL BOARD

AUG 3 0 2006

OhioHealth/Hall
0254

STEP I CONSENT AGREEMENT
ADAM P. HALL, D.O.
PAGE 8

OHIO STATE MEDICAL BOARD

AUG 3 0 2006

## ACKNOWLEDGMENTS/LIABILITY RELEASE

Dr. Hall acknowledges that he has had an opportunity to ask questions concerning the terms of this Consent Agreement and that all questions asked have been answered in a satisfactory manner.

Any action initiated by the Board based on alleged violations of this Consent Agreement shall comply with the Administrative Procedure Act, Chapter 119., Ohio Revised Code.

Dr. Hall hereby releases the Board, its members, employees, agents, officers and representatives jointly and severally from any and all liability arising from the within matter.

This Consent Agreement shall be considered a public record as that term is used in Section 149.43, Ohio Revised Code. Further, this information may be reported to appropriate organizations, data banks and governmental bodies. Dr. Hall acknowledges that his social security number will be used if this information is so reported and agrees to provide his social security number to the Board for such purposes.

## EFFECTIVE DATE

It is expressly understood that this Consent Agreement is subject to ratification by the Board prior to signature by the Secretary and Supervising Member and shall become effective upon the last date of signature below.

_____
ADAM P. HALL., D.O.

8-30-06
_____
DATE

KPBYERS
_____
KEVIN BYERS, ESQ.
Attorney for Dr. Hall

8/30/06
_____
DATE

_____
LANCE A. TALMAGE, M.D.
Secretary

9-13-06
_____
DATE

_____
RAYMOND J. ALBERT
Supervising Member

9/13/06
_____
DATE

_____
MARCIE PASTRICK
Enforcement Attorney

august 30, 2006
_____
DATE

OhioHealth/Hall
0255

Doctors Hospital
OhioHealth

Quarter Ending

# RESIDENT QUARTERLY EVALUATION

**Department:** _Anesthesiology_

**Evaluation of Resident:** _Adam Hall, D.O._

**Period of Training:** _2/1/04 - 4/30/04_     **Quarter:** _First_

_Phy II, RI_

_Please write the number in the right-hand column that you think most nearly fits the Resident's usual behavior or characteristics, using the following scale:_

0 = Unable to evaluate          3 = Average
1 = Definitely below average    4 = Above average
2 = Somewhat below average      5 = Superior

**EXHIBIT**

_22_

## CHARACTERISTICS:

1. Shows good clinical judgement, reaches valid decisions, takes appropriate action.   _2_

2. Has thorough up-to-date knowledge of program, appropriate to stage in career.   _2_

3. Makes thorough examination of each patient as may be required for accurate diagnosis and treatment.   _2_

4. Keeps full and accurate records, legibly written.   _3_

5. Maintains genuine concern for patients during their illness and after discharge.   _3_

6. Communicates well in every day work and relationships.   _2_

7. Is available when needed and carries fair share of the load.   _3_

8. Is considerate of others - patients, co-workers, all hospital personnel.   _2_

9. Is serious about learning - from books and journals, from conferences, and from own mistakes.   _3_

10. Shows professional behavior, is high-principled, of unquestionable integrity.   _3_

11. Teaching abilities.   _3_

12. Technical skills.   _3_

Should Resident continue in program?     Yes _✓_     No _____

**COMMENTS REQUIRED:** _Adams interpersonal skills are somewhat lacking. At times he needs to slow down and think before he talks. However, I believe his technical_

**THIS EVALUATION MUST BE DISCUSSED WITH THE RESIDENT AND SIGNED BY THE RESIDENT IN THE PROGRAM DIRECTOR'S PRESENCE.**

RESIDENT'S SIGNATURE: _X_____     Date: 6-24-04_

PROGRAM DIR'S SIGNATURE: _____     Date: 6-24-04_

DME'S SIGNATURE: _Kirk T. Williams DO_     Date: 06/29/04

_skills are appropriate for his level of training._     (continued on back)

OhioHealth/Hall
1060

I recommend that Adam continue training under probationary guidelines to be reevaluated periodically until the end of his first year. At that time a decision will be made to progress to the next year of training or continue as a CA-1 resident on probation.

_[signature]_

_[signature]_ DO

OhioHealth/Hall
1061

STEP II
CONSENT AGREEMENT
BETWEEN
ADAM PATRICK HALL, D.O.
AND
THE STATE MEDICAL BOARD OF OHIO

This Consent Agreement is entered into by and between Adam Patrick Hall, D.O., [Dr. Hall], and the State Medical Board of Ohio [Board], a state agency charged with enforcing Chapter 4731., Ohio Revised Code.

Dr. Hall enters into this Consent Agreement being fully informed of his rights under Chapter 119., Ohio Revised Code, including the right to representation by counsel and the right to a formal adjudicative hearing on the issues considered herein.

## BASIS FOR ACTION

This Consent Agreement is entered into on the basis of the following stipulations, admissions and understandings:

A.  The Board is empowered by Section 4731.22, Ohio Revised Code, to limit, revoke, suspend a certificate, refuse to register or reinstate an applicant, or reprimand or place on probation the holder of a certificate for violation of Section 4731.22(B)(19), Ohio Revised Code, "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills," and/or Section 4731.22(B)(26), Ohio Revised Code, "impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice."

B.  The Board enters into this Consent Agreement in lieu of formal proceedings based upon the violation of Sections 4731.22(B)(19) and (B)(26), Ohio Revised Code, as set forth in Paragraphs E through F of the September 13, 2006 Step I Consent Agreement Between Adam Patrick Hall, D.O., and the State Medical Board of Ohio [September 2006 Step I Consent Agreement], a copy of which is attached hereto and fully incorporated herein, as well as in Paragraphs E through H below. The Board expressly reserves the right to institute formal proceedings based upon any other violations of Chapter 4731. of the Revised Code, whether occurring before or after the effective date of this Consent Agreement.



EXHIBIT
_____

OHIO STATE MEDICAL BOARD

MAR 0 6 2007

OhioHealth/Hall
1007

Exhibit 11



STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 2

C.   Dr. Hall is applying for reinstatement of his license to practice osteopathic medicine
     and surgery in the state of Ohio, which was indefinitely suspended pursuant to terms
     of the above-referenced September 2006 Step I Consent Agreement.

D.   Dr. Hall states that he is also licensed to practice osteopathic medicine and surgery in
     the states of Missouri and Kansas.

E.   Dr. Hall admits that he initially entered inpatient treatment for cortical steroid abuse,
     at the Woods at Parkside [Parkside], a Board-approved treatment provider in
     Columbus, Ohio, on or about July 31, 2006, that he transitioned to out-patient
     treatment on or about August 28, 2006, and that he was subsequently discharged,
     treatment complete, on or about September 5, 2006.  Dr. Hall further admits that in
     addition to his abuse of corticosteroids, in the past he also self-medicated with Elavil
     and Ultram, and excessively consumed alcohol to the point of having blackout events.
     Dr. Hall further admits that during his treatment at Parkside, he received an additional
     diagnosis of Bipolar Disorder for which he was prescribed medication.

F.   Dr. Hall states and the Board acknowledges receipt of information to support that he
     has remained compliant with the terms of his aftercare contract with Parkside, which
     is effective from on or about October 18, 2006, to October 18, 2008; and with the
     terms of his advocacy contract with the Ohio Physician Health Program [OPHP],
     which is effective from on or about December 11, 2006, to December 11, 2011.

G.   Dr. Hall states and the Board acknowledges receipt of information to support that
     David Goldberg, D.O., Medical Director of Greene Hall, a Board-approved treatment
     provider in Xenia, Ohio, provided a written report indicating that Dr. Hall's ability to
     practice has been assessed and that he has been found capable of practicing
     osteopathic medicine and surgery according to acceptable and prevailing standards of
     care, as long as certain treatment and monitoring requirements are in place, including
     that he receives psychiatric counseling for his diagnosis of Bipolar Disorder weekly
     for a minimum of six months.

     Dr. Hall states and the Board acknowledges receipt of information to support that
     Harry Nguyen, M.D., Medical Director of Parkside, provided a written report
     indicating that Dr. Hall's ability to practice has been assessed and that he has been
     found capable of practicing osteopathic medicine and surgery according to acceptable
     and prevailing standards of care, as long as certain treatment and monitoring
     requirements are in place, including that he receives psychiatric counseling for his
     diagnosis of Bipolar Disorder.

     Dr. Hall states, and the Board acknowledges receipt of information to support that
     Victoria Sanelli, M.D., a psychiatrist who was approved by the Board to provide an
     assessment of Dr. Hall, evaluated Dr. Hall and submitted a report to the Board on or
     about December 19, 2006, in which she stated that Dr. Hall's diagnoses include

OHIO STATE MEDICAL BOARD

MAR 0 6 2007



OhioHealth/Hall
1008

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 3

steroid dependence in early sustained remission, and that although Dr. Hall has been recently diagnosed with possible Bipolar Disorder, it was Dr. Sanelli's opinion as an addiction psychiatrist that it is extremely difficult to assign an Axis I diagnosis to someone who has been recently involved in substance abuse. Dr. Hall further states, and the Board acknowledges receipt of information to support, that Dr. Sanelli further opined that Dr. Hall has a Mood Disorder, which may be depressed mood or Bipolar Disorder, and that Dr. Hall's ability to practice osteopathic medicine and surgery has been assessed, and he is capable of practicing according to acceptable and prevailing standards of care, so long as certain treatment and monitoring requirements are in place.

H.  Dr. Hall states and the Board acknowledges receipt of information to support that Dr. Hall has substantially fulfilled the conditions for reinstatement of his certificate to practice osteopathic medicine and surgery in the state of Ohio, as established in the above-referenced September 2006 Step I Consent Agreement between Dr. Hall and the Board.

## AGREED CONDITIONS

Wherefore, in consideration of the foregoing and mutual promises hereinafter set forth, and in lieu of any formal proceedings at this time, the certificate of Dr. Hall to practice osteopathic medicine and surgery in the State of Ohio shall be reinstated, and Dr. Hall knowingly and voluntarily agrees with the Board to the following PROBATIONARY terms, conditions and limitations:

1.  Dr. Hall shall obey all federal, state, and local laws, and all rules governing the practice of osteopathic medicine in Ohio.

2.  Dr. Hall shall submit quarterly declarations under penalty of Board disciplinary action and/or criminal prosecution, stating whether there has been compliance with all the conditions of this Consent Agreement. The first quarterly declaration must be received in the Board's offices on the date his quarterly declaration would have been due pursuant to his September 2006 Step I Consent Agreement with the Board. Subsequent quarterly declarations must be received in the Board's offices on or before the first day of every third month.

3.  Dr. Hall shall appear in person for an interview before the full Board or its designated representative. The first such appearance shall take place on the date his appearance would have been scheduled pursuant to his September 2006 Step I Consent Agreement with the Board. Subsequent personal appearances must occur every three months thereafter, and/or as otherwise requested by the Board. If an appearance is missed or is rescheduled for any reason, ensuing appearances shall be scheduled based on the appearance date as originally scheduled.

OHIO STATE MEDICAL BOARD

MAR 0 6 2007



OhioHealth/Hall
1009

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 4

4.   Dr. Hall shall obtain permission from the Board for departures or absences from
     Ohio.  Such periods of absence shall not reduce the probationary term, unless
     otherwise determined by motion of the Board for absences of three months or longer,
     or by the Secretary or the Supervising Member of the Board for absences of less than
     three months, in instances where the Board can be assured that probationary
     monitoring is otherwise being performed.

5.   In the event Dr. Hall is found by the Secretary of the Board to have failed to comply
     with any provision of this Consent Agreement, and is so notified of that deficiency in
     writing, such period(s) of noncompliance will not apply to the reduction of the
     probationary period under this Consent Agreement.

## MONITORING OF REHABILITATION AND TREATMENT

### Drug Associated Restrictions

6.   Dr. Hall shall keep a log of all controlled substances prescribed.  Such log shall be
     submitted, in the format approved by the Board, thirty days prior to Dr. Hall's
     personal appearance before the Board or its designated representative, or as otherwise
     directed by the Board.  Further, Dr. Hall shall make his patient records with regard to
     such prescribing available for review by an agent of the Board upon request.

7.   Dr. Hall shall not, without prior Board approval, administer, personally furnish, or
     possess (except as allowed under Paragraph 8 below) any controlled substances as
     defined by state or federal law.  In the event that the Board agrees at a future date to
     modify this Consent Agreement to allow Dr. Hall to administer or personally furnish
     controlled substances, Dr. Hall shall keep a log of all controlled substances
     prescribed, administered or personally furnished.  Such log shall be submitted in the
     format approved by the Board thirty days prior to Dr. Hall's personal appearance
     before the Board or its designated representative, or as otherwise directed by the
     Board.  Further, Dr. Hall shall make his patient records with regard to such
     prescribing, administering, or personally furnishing available for review by an agent
     of the Board upon request.

### Sobriety

8.   Dr. Hall shall abstain completely from the personal use or possession of drugs, except
     those prescribed, dispensed or administered to him by another so authorized by law
     who has full knowledge of Dr. Hall's history of chemical dependency and psychiatric
     diagnoses.

9.   Dr. Hall shall abstain completely from the use of alcohol.

OHIO STATE MEDICAL BOARD

MAR 0 6 2007

RECEIVED

OhioHealth/Hall
1010

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 5

## Drug and Alcohol Screens/Supervising Physician

10. Dr. Hall shall submit to random urine screenings for drugs and alcohol on a weekly basis or as otherwise directed by the Board. Dr. Hall shall ensure that all screening reports are forwarded directly to the Board on a quarterly basis. The drug testing panel utilized must be acceptable to the Secretary of the Board.

Dr. Hall shall abstain from consumption of poppy seeds or any other food or liquid that may produce false results in a toxicology screen.

Dr. Hall and the Board agree that the person or entity previously approved by the Board to serve as Dr. Hall's supervising physician pursuant to the September 2006 Step I Consent Agreement is hereby approved to continue as Dr. Hall's designated supervising physician under this Consent Agreement, unless within thirty days of the effective date of this Consent Agreement, Dr. Hall submits to the Board for its prior approval the name and curriculum vitae of an alternative supervising physician to whom Dr. Hall shall submit the required urine specimens. In approving an individual to serve in this capacity, the Board will give preference to a physician who practices in the same locale as Dr. Hall. Dr. Hall and the supervising physician shall ensure that the urine specimens are obtained on a random basis and that the giving of the specimen is witnessed by a reliable person. In addition, the supervising physician shall assure that appropriate control over the specimen is maintained and shall immediately inform the Board of any positive screening results.

The Board expressly reserves the right to disapprove any person or entity proposed to serve as Dr. Hall's designated supervising physician, or to withdraw approval of any person or entity previously approved to serve as Dr. Hall's designated supervising physician, in the event that the Secretary and Supervising Member of the Board determine that any such supervising physician has demonstrated a lack of cooperation in providing information to the Board or for any other reason.

Dr. Hall shall ensure that the supervising physician provides quarterly reports to the Board, in a format acceptable to the Board, as set forth in the materials provided by the Board to the supervising physician, verifying whether all urine screens have been conducted in compliance with this Consent Agreement, whether all urine screens have been negative, and whether the supervising physician remains willing and able to continue in his or her responsibilities.

In the event that the designated supervising physician becomes unable or unwilling to so serve, Dr. Hall must immediately notify the Board in writing, and make arrangements acceptable to the Board for another supervising physician as soon as practicable. Dr. Hall shall further ensure that the previously designated supervising

MAR 0 6 2007

OhioHealth/Hall
1011

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 6

physician also notifies the Board directly of his or her inability to continue to serve and the reasons therefore.

All screening reports and supervising physician reports required under this paragraph must be received in the Board's offices no later than the due date for Dr. Hall's quarterly declaration. It is Dr. Hall's responsibility to ensure that reports are timely submitted.

11. The Board retains the right to require, and Dr. Hall agrees to submit, blood or urine specimens for screenings for drugs and alcohol, for analysis of medications that may be prescribed for Dr. Hall, or for any other purpose, at Dr. Hall's expense upon the Board's request and without prior notice. Dr. Hall's refusal to submit a blood or urine specimen upon request of the Board shall result in a minimum of one year of actual license suspension.

**Monitoring Physician**

12. Before engaging in any medical practice, Dr. Hall shall submit the name and curriculum vitae of a monitoring physician for prior written approval by the Secretary or Supervising Member of the Board. In approving an individual to serve in this capacity, the Secretary and Supervising Member will give preference to a physician who practices in the same locale as Dr. Hall and who is engaged in the same or similar practice specialty.

The monitoring physician shall monitor Dr. Hall and his medical practice, and shall review Dr. Hall's patient charts. The chart review may be done on a random basis, with the frequency and number of charts reviewed to be determined by the Board.

Further, the monitoring physician shall provide the Board with reports on the monitoring of Dr. Hall and his medical practice, and on the review of Dr. Hall's patient charts. Dr. Hall shall ensure that the reports are forwarded to the Board on a quarterly basis and are received in the Board's offices no later than the due date for Dr. Hall's quarterly declaration.

In the event that the designated monitoring physician becomes unable or unwilling to serve in this capacity, Dr. Hall must immediately so notify the Board in writing. In addition, Dr. Hall shall make arrangements acceptable to the Board for another monitoring physician within thirty days after the previously designated monitoring physician becomes unable or unwilling to serve, unless otherwise determined by the Board. Furthermore, Dr. Hall shall ensure that the previously designated monitoring physician also notifies the Board directly of his or her inability to continue to serve and the reasons therefore.

OHIO STATE MEDICAL BOARD

MAR 0 6 2007



OhioHealth/Hall
1012

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 7

## Psychiatric Treatment

13.   Dr. Hall and the Board agree that the person previously approved by the Board to serve as Dr. Hall's treating psychiatrist pursuant to the September 2006 Step I Consent Agreement is hereby approved to continue as Dr. Hall's designated treating psychiatrist under this Consent Agreement, unless within thirty days of the effective date of this Consent Agreement, Dr. Hall submits to the Board for its prior approval the name and curriculum vitae of an alternative psychiatrist of his choice.  Upon approval by the Board, Dr. Hall shall undergo and continue psychiatric treatment, including individual psychotherapy, weekly for six months, after which the frequency of the psychiatric treatment is to be determined by his Board-approved treating psychiatrist or as otherwise directed by the Board.  Dr. Hall shall comply with his psychiatric treatment plan, including taking medications as prescribed and/or ordered for his psychiatric disorder.  Dr. Hall shall ensure that psychiatric reports are forwarded by his treating psychiatrist to the Board on a quarterly basis, or as otherwise directed by the Board.  The psychiatric reports shall contain information describing Dr. Hall's current treatment plan and any changes that have been made to the treatment plan since the prior report; Dr. Hall's compliance with his treatment plan; Dr. Hall's mental status; Dr. Hall's progress in treatment; and results of any laboratory studies that have been conducted since the prior report.  Dr. Hall shall ensure that his treating psychiatrist immediately notifies the Board of his failure to comply with his psychiatric treatment plan and/or any determination that Dr. Hall is unable to practice due to his psychiatric disorder.  It is Dr. Hall's responsibility to ensure that quarterly reports are received in the Board's offices no later than the due date for Dr. Hall's quarterly declaration.

The psychotherapy required as part of Dr. Hall's psychiatric treatment pursuant to this paragraph may be delegated by Dr. Hall's treating psychiatrist to an appropriately licensed mental health professional approved in advance by the Board, so long as Dr. Hall's treating psychiatrist oversees/supervises such psychotherapy; includes information concerning Dr. Hall's participation and progress in psychotherapy in his or her quarterly reports; and continues to meet personally with Dr. Hall at least once every three months.  Should the psychotherapy required pursuant to this provision be delegated to a licensed mental health professional, Dr. Hall shall ensure that psychotherapy reports are forwarded by his treating licensed mental health professional to the Board on a quarterly basis, or as otherwise directed by the Board.  The psychotherapy reports shall contain information describing Dr. Hall's current treatment plan and any changes that have been made to the treatment plan since the prior report; Dr. Hall's compliance with his treatment plan; Dr. Hall's mental status; Dr. Hall's progress in treatment; and results of any laboratory studies that have been conducted since the prior report.  Dr. Hall shall ensure that his treating licensed mental health professional immediately notifies the Board of his failure to comply with his psychotherapy treatment plan and/or any determination that Dr. Hall is unable to practice due to his psychiatric disorder.  These psychotherapy reports shall

MAR 0 6 2007

OhioHealth/Hall
1013

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 8

be in addition to the reports submitted by Dr. Hall's treating psychiatrist. It is Dr. Hall's responsibility to ensure that all quarterly reports are received in the Board's offices no later than the due date for Dr. Hall's quarterly declaration.

In the event that the designated treating psychiatrist becomes unable or unwilling to serve in this capacity, Dr. Hall must immediately so notify the Board in writing. In addition, Dr. Hall shall make arrangements acceptable to the Board for another treating psychiatrist within thirty days after the previously designated treating psychiatrist becomes unable or unwilling to serve, unless otherwise determined by the Board. Furthermore, Dr. Hall shall ensure that the previously designated treating psychiatrist also notifies the Board directly of his or her inability to continue to serve and the reasons therefore.

## Rehabilitation Program

14. Dr. Hall shall maintain participation in an alcohol and drug rehabilitation program, such as A.A., N.A., C.A., or Caduceus, no less than three times per week. Substitution of any other specific program must receive prior Board approval.

    Dr. Hall shall submit acceptable documentary evidence of continuing compliance with this program which must be received in the Board's offices no later than the due date for Dr. Hall's quarterly declarations.

## Aftercare

15. Dr. Hall shall maintain continued compliance with the terms of the Agreement (advocacy contract) with the OPHP or, if approved in advance by the Board, another physicians health program, provided that, where terms of the advocacy contracts conflict with terms of this Consent Agreement, the terms of this Consent Agreement shall control.

16. Dr. Hall shall maintain continued compliance with the terms of the aftercare contract entered into with his treatment provider, provided that, where terms of the aftercare contract conflict with terms of this Consent Agreement, the terms of this Consent Agreement shall control.

## Course on Personal/Professional Ethics

17. Before the end of the first year of probation, or as otherwise approved by the Board, Dr. Hall shall provide acceptable documentation of successful completion of a course or courses dealing with personal and professional ethics. The exact number of hours and the specific content of the course or courses shall be subject to the prior approval of the Board or its designee. Any courses taken in compliance with this provision shall be in addition to the Continuing Medical Education requirements for licensure

OHIO STATE MEDICAL BOARD

MAR 0 6 2007     OhioHealth/Hall
1014

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 9

for the Continuing Medical Education acquisition period(s) in which they are completed.  In addition, at the time Dr. Hall submits the documentation of successful completion of the course or courses dealing with personal and professional ethics, he shall also submit to the Board a written report describing the course, setting forth what he learned from the course, and identifying with specificity how he will apply what he has learned to his practice of osteopathic medicine in the future.

**Releases**

18.  Dr. Hall shall provide authorization, through appropriate written consent forms, for disclosure of evaluative reports, summaries, and records, of whatever nature, by any and all parties that provide treatment or evaluation for Dr. Hall's chemical dependency, Bipolar Disorder, or related conditions, or for purposes of complying with this Consent Agreement, whether such treatment or evaluation occurred before or after the effective date of this Consent Agreement.  The above-mentioned evaluative reports, summaries, and records are considered medical records for purposes of Section 149.43 of the Ohio Revised Code and are confidential pursuant to statute.  Dr. Hall further agrees to provide the Board written consent permitting any treatment provider from whom he obtains treatment to notify the Board in the event he fails to agree to or comply with any treatment contract or aftercare contract.  Failure to provide such consent, or revocation of such consent, shall constitute a violation of this Consent Agreement.

**Required Reporting by Licensee**

19.  Within thirty days of the effective date of this Consent Agreement, Dr. Hall shall provide a copy of this Consent Agreement to all employers or entities with which he is under contract to provide health care services or is receiving training; and the Chief of Staff at each hospital where he has privileges or appointments.  Further, Dr. Hall shall provide a copy of this Consent Agreement to all employers or entities with which he contracts to provide health care services, or applies for or receives training, and the Chief of Staff at each hospital where he applies for or obtains privileges or appointments.

20.  Within thirty days of the effective date of this Consent Agreement, Dr. Hall shall provide a copy of this Consent Agreement by certified mail, return receipt requested, to the proper licensing authority of any state or jurisdiction in which he currently holds any professional license.  Dr. Hall further agrees to provide a copy of this Consent Agreement by certified mail, return receipt requested, at time of application to the proper licensing authority of any state in which he applies for any professional license or for reinstatement of any professional license.  Further, Dr. Hall shall provide this Board with a copy of the return receipt as proof of notification within thirty days of receiving that return receipt.

OHIO STATE MEDICAL BOARD

MAR 0 6 2007

OhioHealth/Hall
1015

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 10

21. Dr. Hall shall provide a copy of this Consent Agreement to all persons and entities that provide Dr. Hall chemical dependency and/or psychiatric treatment or monitoring.

## FAILURE TO COMPLY

If, in the discretion of the Secretary and Supervising Member of the Board, Dr. Hall appears to have violated or breached any term or condition of this Consent Agreement, the Board reserves the right to institute formal disciplinary proceedings for any and all possible violations or breaches, including, but not limited to, alleged violations of the laws of Ohio occurring before the effective date of this Consent Agreement.

If the Secretary and Supervising Member of the Board determine that there is clear and convincing evidence that Dr. Hall has violated any term, condition or limitation of this Consent Agreement, Dr. Hall agrees that the violation, as alleged, also constitutes clear and convincing evidence that his continued practice presents a danger of immediate and serious harm to the public for purposes of initiating a summary suspension pursuant to Section 4731.22(G), Ohio Revised Code.

## DURATION/MODIFICATION OF TERMS

Dr. Hall shall not request termination of this Consent Agreement for a minimum of five years. In addition, Dr. Hall shall not request modification to the probationary terms, limitations, and conditions contained herein for at least one year. Otherwise, the above-described terms, limitations and conditions may be amended or terminated in writing at any time upon the agreement of both parties.

## ACKNOWLEDGMENTS/LIABILITY RELEASE

Dr. Hall acknowledges that he has had an opportunity to ask questions concerning the terms of this Consent Agreement and that all questions asked have been answered in a satisfactory manner.

Any action initiated by the Board based on alleged violations of this Consent Agreement shall comply with the Administrative Procedure Act, Chapter 119., Ohio Revised Code.

Dr. Hall hereby releases the Board, its members, employees, agents, officers and representatives jointly and severally from any and all liability arising from the within matter.

This Consent Agreement shall be considered a public record as that term is used in Section 149.43, Ohio Revised Code. Further, this information may be reported to appropriate organizations, data banks and governmental bodies. Dr. Hall acknowledges that his social security number will be used if this information is so reported and agrees to provide his social security number to the Board for such purposes.

OHIO STATE MEDICAL BOARD

MAR 0 6 2007

OhioHealth/Hall
1016

STEP II CONSENT AGREEMENT
ADAM PATRICK HALL, D.O.
PAGE 11

## EFFECTIVE DATE

It is expressly understood that this Consent Agreement is subject to ratification by the Board prior to signature by the Secretary and Supervising Member and shall become effective upon the last date of signature below.

_____
ADAM PATRICK HALL, D.O.

_____
LANCE A. TALMAGE, M.D.
Secretary

_____3-5-2007_____
DATE

_____3-14-07_____
DATE

_____
RAYMOND J. ALBERT
Supervising Member

_____8/14/07_____
DATE

_____
MARCIE PASTRICK
Enforcement Attorney

_____March 6, 2007_____
DATE

OHIO STATE MEDICAL BOARD

MAR 0 6 2007

OhioHealth/Hall
1017

HP LaserJet 3100;                    9373766983;                Jan-16 06:04PM;   Page 6/10

October 16, 2006



Greene
Memorial
Hospital

1141 N. Monroe Drive
Xenia, Ohio 45385

(937) 352-2000
www.greenehealth.org

State Medical Board of Ohio
Barbara Jacobs,
Public Service Administrator
77 S. High Street, 17th Floor
Columbus, Ohio  43215



EXHIBIT
24

RE:  Reinstatement of Medical Licensure for Adam P. Hall, D.O.

Dear Ms. Jacobs:

On October 5, 2006 I interviewed Dr. Adam Hall at his request.  This interview was to
evaluate Dr. Hall's present status and ability to return to medical practice.  He provided
me with several documents to review. These documents were used as part of my overall
evaluation and these items included the following:  (1) A copy of his Step I Consent
Agreement with the State Medical Board of Ohio, (2) A copy of the letter from the
Woods at Parkside regarding his treatment there, (3) Contract with OPHP.  Dr. Hall
indicates he has signed a contract with OPHP but did not have a copy available for me at
the time of the interview, (4) Several copies of his attendance at 12-Step programs.  Dr.
Hall reviewed with me his history of drug and alcohol abuse.  I am sure the Board is
aware of his history and I will do my best to not duplicate all this historic information.
Dr. Hall indicated to me that he had been in rather good physical condition most of his
life.  He was involved with athletics and in fact, was a triathlete.  The problem with his
foot and/or ankle pain began some time in 1996.  At various times from that point on he
had problems such as Achilles' tendon tear, Achilles' bursitis, and plantar fasciitis.  He
has been treated for the last 10 years for various inflammatory and painful processes in
his feet and ankles.  There were many times when he self-injected these areas with
steroids.  He has also received injections or surgery from podiatrists for the same
problems on several occasions.  You are aware of his inappropriate obtainment of and use
of Celestone during his anesthesia residency at Doctors' Hospital in April, 2006.
Subsequent to this poor judgment on his part he was then discharged from his residency.
Following this he did receive evaluation and treatment at Parkside for corticosteroid
abuse. He then participated in an intensive outpatient program and started his after-care
with Parkside on September 5, 2006.  Dr. Hall indicates to me he has also been
participating in at least three 12-step meetings per week since finishing his inpatient
program.  Dr. Hall is also working as a physician in an emergency room in the state of
Missouri since he still has an active license there.

There are some historical events that I uncovered which might be contributory to his
ultimate problem and abuse with corticosteroids.  Since finishing medical school, Dr.
Hall has entered but not completed three different residencies; one anesthesia residence in
California approximately 2001 to 2002; second residency in family practice in Kansas

Exhibit 16

A member of Greene Health Partners

OhioHealth/Hall
1041

Barbara Jacobs
October 16, 2006
Page Two


City for approximately six months in 2003; the latter part of 2003 and early 2004 he worked in an emergency room and his third residency then was from February, 2004 through April, 2006 at which time he was terminated. There are other areas of substance abuse or misuse which were divulged during my interview with Dr. Hall. In addition to the corticosteroids which have been a problem for the last 10 years, Dr. Hall indicates that he has self-medicated with Elavil to help him sleep at various times in his adult life. He has also self-medicated with Ultram for pain and indicated that there have been times in his life that he has consumed alcohol to excess and to the point of having blackout events.

A possible fortunate event for Dr. Hall occurred during his 28-day treatment for the corticosteroid abuse. Apparently at that time the psychiatric evaluation uncovered a rather significant bipolar disorder. He has started treatment and it is my understanding that he has an appointment with a new psychiatrist, Dr. Ware, in the Columbus area. This appointment is scheduled for 11/14/06. His family history is replete with members that have had substance abuse issues. His father has a past history of alcoholism. He has two brothers, one of whom has an alcohol problem, and he has a sister who has a questionable eating disorder. He readily admits that from his perspective there are mental health problems throughout his family. Dr. Hall also revealed to me that in 2001 to 2004 there was hardly a day that went by that he did not think about or talk about suicide. He has never acted upon any of his thoughts but they obviously were present for a lengthy period of time. Another element that is of significance at the present time is the fact that Dr. Hall is married and has a wife who may have a substance abuse problem herself. This will not bode well for the recovery of Dr. Hall.


I believe Dr. Hall has started on a good recovery program in that he is attending a minimum of three 12-step programs per week. He has also established with a family physician, Dr. Susan Dobb Krychoski (spelling questionable). This physician is also functioning as Dr. Hall's monitor and possibly his supervising physician. He has been on medication for his bipolar disorder and his insomnia in the form of Symbyax and Trazadone.

Following my interview with Dr. Adam Hall and after reviewing my personal notes, I did formulate my personal opinion regarding the reinstatement of his licensure. In addition to complying with all the requirements of the State Medical Board and his agreement outlined with OPHP, I feel that some counseling needs to take place. I believe some serious psychiatric counseling in addition to his medication needs to take place on a regular basis, probably weekly, for a minimum of 6-12 months. I would suggest that if he cannot find a psychiatrist that actually does in-depth psychotherapy, he should find a psychologist who would have the training to deal with a professional such as Dr. Hall who is dealing with a dual-diagnosis. In addition, I strongly recommend that family

OhioHealth/Hall
1042

Barbara Jacobs
October 16, 2006
Page Three

counseling take place with Dr. Hall and his wife and this, too, should occur if not weekly every two weeks and at least for a six-month period of time.   If Dr. Hall follows and completes all of these recommendations, I do believe he would be capable of practicing medicine according to acceptable and prevailing standards of care.

Thank you for allowing me to provide this evaluation regarding Dr. Adam P. Hall.  If you have any further questions, please contact me at your convenience.

Sincerely,

David D. Goldberg, D.O.
Medical Director

DDG:pkm

OhioHealth/Hall
1043

# Center for Akron Psychiatry
## 444 North Main Street   Akron, Ohio 44310
## Phone: 330 379 5235   Fax: 330 379 9226

19 December 2006

Danielle Bickers
Compliance Officer
State Medical Board of Ohio
77 South High Street – 17th Floor
Columbus, Ohio 43215 6127

**Re: Adam P. Hall, D.O.**

Ms. Bickers:

I had the opportunity to evaluate Dr. Hall on December 8, 2006. I performed a complete Psychiatric Assessment as well as a Biopsychosocial Assessment of his drug and alcohol use history. At the time of the interview, I had available to me the following documents from the State Medical Board of Ohio: Report and Recommendations (dated 8/24/05), Entry of Order (12/14/05), Entry Nunc Pro Tunc (02/08/06), and a Step I Consent Agreement (August 2006).

It is my clinical opinion that Dr. Hall has Substance Dependence (Steroids) in early sustained remission. He has successfully completed treatment for his substance abuse issues and is active in a program of recovery. His recovery program includes regular attendance at 12 Step meetings (AA & NA) and weekly, random Urine Drug Screens as ordered by his primary care physician Dr. Daab-Kryzkowski.

As to the matter of his mental health, while receiving substance abuse treatment at Parkside Hospital in August 2006 he was diagnosed with a possible Bipolar Disorder. He was consequently prescribed Symbyax and Trazodone. Since completing the program at Parkside, he has continued on both medications under the care of Dr. Daab-Kryzkowski. During my evaluation of Dr. Hall, he reported few if any symptoms of mania currently or in the past, nor did he display any signs of mania. He does, however, endorse multiple symptoms of depression in the past. He acknowledges improvement of those symptoms with sobriety and likely secondarily to the medications and improved sleep.

As an Addiction Psychiatrist I have found it extremely difficult to assign an additional Axis I diagnosis to someone who is harmfully involved with substances (drugs and/or alcohol) – whether it be current or recent use. Dr. Hall was diagnosed with and treated for a "possible" Bipolar Disorder while in the early stages of his treatment for Substance Abuse. I can say with certainty that he has a Substance Dependence diagnosis and a probable Mood Disorder – I cannot say at this point whether the mood disorder is primarily with depressed mood or bipolar disorder.

It is my clinical impression that **Dr. Adam Hall is capable of practicing medicine according to acceptable and prevailing standards of care.** He must, however, be monitored very closely by his supervising physician via Urine Drug Screens and be



EXHIBIT

OhioHealth/Hall
1039

Exhibit 15

held to a strict Aftercare Plan, i.e., 12 Step meetings (AA and/or NA), Caduceus meetings, etc. He must also follow-up with a Psychiatrist to determine more accurately whether there is indeed a diagnosis of Bipolar Disorder. I have advised him to continue taking his medications until he is established with a psychiatrist.

Finally, given his history of poor judgment in the past, I would advise that he <u>not have ready access to controlled substances.</u>

I hope that the above information and recommendations is helpful and sufficient. Please feel free to contact me if there is need for further clarification.

Sincerely,

Victoria L. Sanelli, M.D.
Certified, American Society of Addiction Medicine

vls/

OhioHealth/Hall
1040